UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIMEONE INSURANCE
COMPANY,

  Plaintiff/Counter-Defendant,   Civil Case No. 19-10276
                  Honorable Linda V. Parker

  v.

GRAND TRUMBULL, LLC,

  Defendant/Counter-Plaintiff.
_____/

**OPINION & ORDER (1) GRANTING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 12) AND (2) DENYING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 15)**

  After a fire damaged Defendant/Counter-Plaintiff Grand Trumbull, LLC's ("Trumbull") commercial building, Trumbull filed a claim with its insurer, Plaintiff/Counter-Defendant PrimeOne Insurance Company ("PrimeOne"). The parties dispute the application of a coinsurance condition, which impacts the amount for which PrimeOne is liable. Presently before the Court are cross-motions for summary judgment, seeking a declaration from the Court addressing the coinsurance condition issue. (ECF Nos. 12, 15.) The motions have been fully briefed. (ECF Nos. 16, 18, 19, 25.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument

1

pursuant to Local Rule 7.1(f). For the reasons that follow, the Court grants Trumbull's Motion for Partial Summary Judgment.

## FACTUAL & PROCEDURAL BACKGROUND

PrimeOne issued a commercial insurance policy in the name of Trumbull, effective August 2, 2017 to August 2, 2018 ("Policy"). (ECF No. 12-1 at Pg. ID 223.) The Policy provided commercial property coverage on a building located at 3401-3429 Grand River, Detroit, MI 48208 ("Covered Property") with a coverage limit of $1,300,000 in the event of loss or damage. (*Id*.) The Policy states in part:

> E. Loss Conditions[:] The following conditions apply . . . .
>
> > 4. Loss Payment[:] In the event of loss or damage covered by this Coverage Form[,] . . . . [w]e will determine the value of lost or damaged property . . . in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition. . . .
> >
> > 7. Valuation[:] We will determine the value of Covered Property in the event of loss or damage as follows:
> >
> > > a. At actual cash value as of the time of loss or damage . . . .

(*Id*. at Pg. ID 245-47 (hereinafter "Valuation Condition").)

The Policy was subject to certain limitations and conditions. One of these conditions is a coinsurance penalty if it is determined that Trumbull underinsured the Covered Property. Coinsurance essentially divides the risk between the insurer and the insured. 15 *Couch on Insurance* § 220:3 (3d ed. 2005). The Policy states, in part:

F. Additional Conditions

> 1. Coinsurance[:] If a Coinsurance percentage is shown in the Declarations, the following condition applies.
>
> > a. We will not pay the full amount of any loss if the value of the Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of the Insurance for the property.

(ECF No. 12-1 at Pg. ID 248 (hereinafter "Coinsurance Condition").) The Policy's Declarations page notes "90%" under the "Co-Ins" column. (*Id*. at Pg. ID 224.) This required Trumbull to insure the Covered Property at 90% of "the value of Covered Property" to avoid triggering the coinsurance penalty.

Notably, Trumbull also purchased "Optional Coverage." With this purchase, the definition of "value of Covered Property" was subject to change. The Policy states:

> G. Optional Coverages[:] If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item. . . .
>
> > 3. Replacement Cost
> >
> > > a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form. . . .
> > >
> > > c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

(*Id.* at Pg. ID 250 (hereinafter "Optional Replacement Cost Coverage").) The Policy's Declarations page notes "RC" under the "Valuation" column. (*Id*. at Pg. ID 223.)

A fire occurred on June 8, 2018, causing damage to the Covered Property. (ECF No. 12 at Pg. ID 188.) Trumbull filed an actual cash value ("ACV") claim, as opposed to a replacement cost ("RCV") claim, and PrimeOne accepted liability. (*Id*.) In their respective summary judgment motions, however, the parties dispute the application of the coinsurance condition. (*Id*.) The parties agree that there is no coinsurance penalty if calculation of a potential penalty on Trumbull's ACV claim is based on the ACV of the Covered Property prior to the fire, rather than the RCV of the Covered Property prior to the fire. (*Id*.) In such a case, PrimeOne would be liable for damages in the agreed upon amount of $723,357.67. (*Id*.)

**STANDARD**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56

mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## APPLICABLE LAW & ANALYSIS

Under Michigan law, "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto–Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992) (citation omitted). "[I]nsurance polices are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). Insurance contracts should be read as a whole, *Wilkie v. Auto–Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003) (citation omitted), and "construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory," *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 430 (Mich. Ct. App. 2005) (citing *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003)). "[A] court must construe and apply unambiguous contract provisions as written." *Rory*, 703 N.W.2d at 26. "When its provisions are capable of conflicting interpretations, an insurance contract is properly considered ambiguous" and is construed in favor of the insured. *Pioneer State Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 262-63 (Mich. Ct. App. 2013) (citations omitted).

PrimeOne alleges that the calculation of the potential coinsurance penalty on Trumbull's ACV claim should be based on the RCV of the Covered Property prior to the loss because Trumbull's decision to purchase the Optional Replacement Cost Coverage changed the definition of "value" in the Valuation Condition—and thus the Coinsurance Condition—from "actual cash value" to "Replacement Cost (without deduction for depreciation)." (*See* ECF No. 15 at Pg. ID 364.) PrimeOne contends that the "value" of the Covered Property at the time of loss should be based on RCV irrespective of whether Trumbull files an ACV claim as opposed to an RCV claim. (*Id.*)

Trumbull alleges that the calculation of the potential coinsurance penalty on its ACV claim should be based on the ACV of the Covered Property prior to the loss because the term "value" in the Valuation Condition—and thus the Coinsurance Condition—depends on the type of claim filed. (ECF No. 12 at Pg. ID 198.) This is because, Trumbull argues, the Policy provides for "baseline" ACV coverage and "additional" RCV coverage, and the RCV coverage "is not triggered unless and until" the insured repairs or replaces the damaged property and submits an RCV claim. (*Id.* at Pg. ID 209.)

After careful consideration, the Court agrees with Trumbull's reading of the policy and concludes that, if the insured files an ACV claim, the value of the Covered Property at the time of loss should be based on the Covered Property's

7

ACV—not RCV—at the time of loss. No court applying Michigan law has interpreted this specific Coinsurance Condition. Notably, however, in *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, the Eighth Circuit construed an insurance policy identical to the policy in this case and concluded that "the proper interpretation of the coinsurance provision depends on whether the insured has filed an [ACV] claim or a [RCV] claim." 715 F.3d 695, 699 (8th Cir. 2013). Though not bound by the rulings of other circuit courts, this Court finds the relevant analysis and conclusion of the *Buddy Bean* opinion to be persuasive.

PrimeOne proffers several counterarguments regarding this interpretation, all of which the Court finds unpersuasive. First, PrimeOne contends that—after substituting the phrase "Actual Cash Value" with "Replacement Cost (without deduction for depreciation)" as stated in the Optional Replacement Cost Coverage provision—the Valuation Condition effectively reads: "[w]e will determine the value of Covered Property in the event of loss or damage as follows: Replacement Cost Value (without deduction for depreciation) as of the time of loss or damage." (ECF No. 15 at Pg. ID 379.) PrimeOne emphasizes that no caveat or condition—such as "unless the insured chooses to make an ACV claim under [G.3.c]"—follows. (*Id.*)

PrimeOne's proposed interpretation is flawed. After reading the Policy as a whole, *Wilkie*, 664 N.W.2d at 781 n.11, and considering the intent of the parties,

8

*Churchman*, 489 N.W.2d at 433, it would be unreasonable to conclude that Trumbull's decision to purchase Optional Replacement Cost Coverage was intended to automatically eliminate ACV coverage. Notably, when analyzing an identical coinsurance provision in *Buddy Bean*, the Eighth Circuit explained:

> Buddy Bean's choice to purchase a type of expanded coverage was not intended to vitiate its basic coverage. Instead, as the Replacement Cost section (G.3.c) of the policy explains, optional replacement cost coverage provides Buddy Bean the ability to file claims "on an actual cash value basis" in addition to claims "on a replacement cost basis." Interpreting the coinsurance provision as Axis urges would strip the word "basis" in section G.3.c of any meaning. If Buddy Bean's decision to buy replacement cost coverage would automatically change how to calculate the coinsurance provision, the insured would always suffer a substantial coinsurance penalty even on actual cash value claims, rendering section G.3.c irrelevant. Such an interpretation would be at odds with Arkansas law, which directs us to "give effect to all provisions" of the policy so that "all of its parts harmonize." *Davidson*, 463 S.W.2d at 655. . . . Our reading is also supported by other cases in which insurance providers have conceded that this coinsurance provision should be calculated using the property's actual cash value when the insured "elected actual cash value as the basis for their claim." *E.g., Kielbania v. Indian Harbor Ins. Co.*, No. 1:11CV663, 2012 WL 3957926, at *7 n.6 (M.D.N.C. Sept. 10, 2012), adopted, 2012 WL 6554081 (M.D.N.C. Dec. 14, 2012).

715 F.3d at 700.

PrimeOne nonetheless attempts to distinguish *Buddy Bean*, arguing that the Eighth Circuit "ignored . . . policy language conditioning the application of the replacement cost terms and conditions *solely* on what type of policy was purchased." (ECF No. 25 at Pg. ID 471.) PrimeOne points to the following policy

9

language to support this contention: "G. Option Coverages[:] If shown as applicable in the Declaration, the following Optional Coverages apply separately to each item." (ECF No. 16 at Pg. ID 398.) PrimeOne interprets this language to mean: "If replacement cost is shown in the Declarations, then [G.3.a] applies and 'Replacement Cost (without deduction for depreciation) replaces Actual Cash Value.'" (*Id*.) But the *Buddy Bean* court did not ignore this language. Rather, it found that in order to give effect to *all* of the policy's provisions (including G.3.c), the Policy is properly interpreted as giving effect to G.3.a when an insured elects to file a claim on a "replacement cost basis." *See Buddy Bean*, 715 F.3d at 700.

PrimeOne also argues that the *Buddy Bean* court "disregarded the plain language in the Coinsurance Condition which states that it applies to *any* loss or damage without reference to the type of *claim* submitted." (ECF No. 25 at Pg. ID 471.) To be clear, the Coinsurance Condition does not explicitly state that it applies "without reference to the type of claim submitted." The *Buddy Bean* court considered the Policy's provisions as a whole, giving effect to G.3.c which distinguishes between claims for "loss or damage" made on an "actual cash value basis" versus a "replacement cost basis." (ECF No. 12-1 at Pg. ID 250); *see Buddy Bean*, 715 F.3d at 700.

In addition, PrimeOne asserts that the *Buddy Bean* court "ignored that the policy plainly states that the value of the Covered Property at the time of loss is

10

replacement cost when replacement cost is shown in the Declarations." (ECF No. 25 at Pg. ID 471.) But the Optional Replacement Cost Coverage provision does not state this—much less "plainly." (*See* ECF No. 12-1 at Pg. ID 250.) As previously discussed, the *Buddy Bean* court determined that the policy is properly interpreted to require that, when an insured submits an ACV claim, the value of the Covered Property is calculated based on the ACV of the property at the time of loss.

PrimeOne further claims that the *Buddy Bean* court "fabricated [its] outcome" because, "[i]f, as it *agreed* to do, an insured properly insures its property under the replacement cost policy where RCV replaces ACV in valuing covered property at the time of loss, then the insured would never suffer a coinsurance penalty, regardless of the type of claim it submitted." (ECF No. 16 at Pg. ID 398.) PrimeOne misunderstands a fundamental part of *Buddy Bean*'s analysis: the insured, by purchasing the Optional Replacement Cost Coverage, does *not* make a decision—or agree to—automatically change the Valuation Condition's loss calculation method from ACV to RCV. *See Buddy Bean*, 715 F.3d at 700. Such a decision would be made if the insured submitted an RCV claim, which was not the case here.

Second, to support its argument that "value of Covered Property" means "replacement cost" when an insured purchases the Optional Replacement Cost

11

Coverage, PrimeOne points to three cases—all of which are inapposite. (ECF No. 15 at Pg. ID 378.) In *Royal Property*, the coinsurance provision explicitly limited the phrase "value of Covered Property" with the phrase "replacement cost." 706 N.W.2d at 430. Thus, the court found that the coinsurance condition should be calculated based on the RCV of the covered property at the time of the loss. Here, PrimeOne could have—but did not—use the phrase "replacement cost" to explicitly limit the phrase "value of Covered Property" included in the Coinsurance Condition. In *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apts., L.C.*, 572 F.3d 511 (8th Cir. 2009) and *Wenrich v. Emp'rs Mut. Ins. Cos.*, 132 P.3d 970 (Kan. Ct. App. 2006), the disputes concerned RCV claims. As the Eighth Circuit observed, the interpretation detailed in *Buddy Bean* "is also consistent with [the Eighth Circuit's] prior *Boardwalk Apartments* decision and the *Wenrich* case that followed. Neither case addressed how to interpret this insurance policy with respect to an actual cash value claim because only replacement cost claims were at issue." 715 F.3d at 700. The same reasoning applies here.

Finally, PrimeOne argues that "Michigan courts have deemed coinsurance clauses unambiguous, to be applied as written, and consistent with Michigan public policy." (ECF No. 15 at Pg. ID 380.) Trumbull, however, has not argued that all

12

coinsurance policies are against public policy.[1]  And while it may be true that some Michigan courts have found some coinsurance clauses unambiguous, here, the Policy language is—at a minimum—ambiguous as to whether purchase of the Optional Replacement Cost Coverage automatically changed the Covered Property loss measurement from ACV to RCV.  It was reasonable for Trumbull to expect that, after purchasing the Optional Replacement Cost Coverage, it would be able to elect to have its loss calculated based on ACV by filing an ACV claim or based on RCV by filing an RCV claim.  This ambiguity is construed against PrimeOne. *Pioneer State*, 836 N.W.2d at 263 (stating that ambiguous language should be construed against the insurer).

## CONCLUSION

Based on the discussion above, the Court concludes that the purchase of the Optional Replacement Cost Coverage did not change the loss valuation metric incorporated in the Valuation Condition from ACV to RCV and, thus, the Coinsurance Condition should be calculated using the ACV of the Covered Property at the time of loss.  Therefore, Trumbull is not subject to a coinsurance

---

[1] For the reasons discussed in this opinion, the Court need not reach Trumbull's argument regarding whether PrimeOne's proposed interpretation violates M.C.L. § 500.2833(1)(a), which requires that "[e]ach fire insurance policy issued" in Michigan "provide, at a minimum, coverage for the actual cash value of the property at the time of the loss."

13

penalty on its ACV claim and PrimeOne is liable to Trumbull for damages in the agreed upon amount of $723,357.67.

Accordingly,

**IT IS ORDERED** that Defendant/Counter-Plaintiff's Motion for Partial Summary Judgment (ECF No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff/Counder-Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 18, 2020